UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

GARY RITTERBAND,

                    Plaintiff,                      **MEMORANDUM & ORDER**

     -v.-                                06-CV-6628 (DRH)(ETB)

HEMPSTEAD UNION FREE SCHOOL DISTRICT,
SUSAN MCPHEE and JULIUS BROWN, (in their
individual and official capacities),

                    Defendants.
_____

**Appearances:**

**For the Plaintiff:**
**LEEDS MORELLI & BROWN, P.C.**
One Old Country Road, Suite 347
Carle Place, New York 11514
By: Rick Ostrove, Esq.
    Gregory A. Tsonis

**For the Defendants:**
**LEWIS BRISBOIS BISGAARD & SMITH, LLP**
199 Water Street, 25th Floor
New York, New York 10038
By: Peter J. Biging, Esq.
    Joanne J. Romero, Esq.

**HURLEY, Senior District Judge**:

        Plaintiff Gary Ritterband ("Plaintiff") filed the present action against defendants

Hempstead Union Free School District (the "District"), Susan McPhee ("McPhee"), and Julius

Brown ("Brown") (collectively, "Defendants") claiming that he was discriminated against based

on his race and religion.  Defendants have moved to dismiss the Amended Complaint pursuant to

Federal Rule of Civil Procedure ("Rule") 12(b)(6).  For the reasons stated below, the motion is

granted in part and denied in part.

***BACKGROUND***

I.      *The Amended Complaint*

The following facts are taken from the Amended Complaint and are presumed true for purposes of this motion.

Plaintiff is a white, Jewish male who commenced employment with the District in 1973 as a fifth and sixth grade teacher.  "Since that time, Plaintiff has witnessed and experienced disparate treatment towards [w]hite individuals."  (Am. Compl. ¶ 12.)

Plaintiff transferred to Alverta B. Gary Schultz Middle School ("ABGS") in the Fall of 2001.  At all times relevant to the Amended Complaint, Brown was the Principal of ABGS and Plaintiff's supervisor.  Upon Plaintiff's arrival at ABGS, Plaintiff sought a position as a Subject Matter Specialist ("SMS") in Science.  This position was ultimately given to McPhee, a black female, who had less experience than Plaintiff.  As a result of her SMS placement, McPhee became Plaintiff's direct supervisor.  Thereafter, McPhee "constantly and continuously harassed Plaintiff."  (*Id.* ¶ 14.)

In September 2004, Plaintiff applied for an after-school teaching program entitled Academic Intervention Services ("AIS") Program.  Plaintiff did not get the position, and alleges that all of the sixth grade teachers selected to the AIS Program were black and less qualified than Plaintiff.  Among the individuals selected was McPhee, who was responsible for selecting who would receive positions within the program.  No white teachers were selected for the program.

In December 2004, Plaintiff was falsely accused of sexual misconduct with a student.  Plaintiff met with defendants Brown and McPhee as well as Plaintiff's Union representative to discuss the incident.  Although Plaintiff was told that the matter would be investigated in an expedited manner, no such investigation occurred.

In May 2005, as a result of this unfounded accusation, Plaintiff was assigned work at home and forcefully escorted off the premises by school security. Plaintiff immediately filed a grievance with the school. Thereafter, Plaintiff received a standard form inviting him to return to work and he was reinstated in August 2005. The form made no reference to the grievance or to the "promised investigation which would have helped to mend Plaintiff's reputation." (Am. Compl. ¶ 23.)

In September 2005, Plaintiff was approached to tutor a student after school hours. Plaintiff requested board approval and subsequently accepted the position. Plaintiff was assured that his name was on the available tutoring list. One week later, Plaintiff was informed that he was not approved for tutoring because of the allegations made against him in 2004. Subsequently, Plaintiff's name was pulled from the list of available tutors during a board meeting. Although Plaintiff's name was eventually put back on the list, Plaintiff could not continue tutoring the student who had previously approached him. In addition, although Plaintiff's name remains on a list of teachers available for home tutoring, and despite a need for home tutors, Plaintiff has not been called for any such position.

In September 2005, Plaintiff applied for positions in the AIS Program. He was denied placement while similarly situated black counterparts with less experience than Plaintiff received positions.

In November 2005, Plaintiff again applied for an SMS position in the school's science department. Plaintiff was again denied the position and the position was given to a black teacher with no administrative certification. All of the SMSs at ABGS are black.

Plaintiff was assigned to five different classrooms in the 2005/2006 school year,

in violation of Plaintiff's collective bargaining agreement. Similarly situated black teachers have not been subject to such movement.

On November 16, 2005, Plaintiff received a memorandum from the Assistant Principal accusing Plaintiff of failing to supervise his class. Plaintiff alleges that this accusation was "malicious, discriminatory, and unfounded." (Am. Compl. ¶ 32.) Plaintiff was observed within class three times, two more than similarly situated black teachers. One such observation was by McPhee, who gave Plaintiff a negative review despite her admission that she knew "nothing of science." (*Id.* ¶ 35.) Plaintiff "rebutted this review and has since been subjected to retaliation for his actions." (*Id.*)

In March 2006, Plaintiff received a memorandum stating that there were concerns regarding his professional behavior. Plaintiff claims that this memorandum was in retaliation for his continued objections regarding alleged discrimination "based on his race and/or religion." (*Id.* ¶ 36.)

In the Summer of 2006, Plaintiff applied for the position of Assistant Coordinator of the summer school program. Plaintiff did not receive an interview for the position and the position was filled by a black employee who was less qualified than Plaintiff.

Finally, Plaintiff alleges generally, without specifying any dates, that he has been denied all special teaching assignments such as after-school programs and tutoring.

## II.     *Procedural Background*

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 29, 2006, and received a right-to-sue letter on November 27, 2006. Plaintiff filed the instant action on December 14, 2006. Thereafter, on April 2, 2007,

Plaintiff filed the Amended Complaint.

**III.     *Claims Asserted in the Amended Complaint***

Plaintiff asserts claims for: (1) violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and the New York State Human Rights Law ("NYSHRL), N.Y. Exec. Law §§ 290 et seq., against all Defendants; (2) aiding and abetting under NYSHRL § 296(6) against Brown and McPhee; and (3) violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. §§ 1981 ("Section 1981") and 1983 ("Section 1983") against the District, and McPhee and Brown in their individual capacities.  By instant motion, Defendants move to dismiss: (1) all of Plaintiff's claims against Brown; (2) Plaintiff's Section 1981 and 1983 claims against the District; (3) Plaintiff's Section 1981 and 1983 claims to the extent they are based upon religious discrimination; (4) all of Plaintiff's claims based upon an allegedly false accusation of sexual misconduct; and (5) all of Plaintiff's claims to the extent they are based upon conduct which is time-barred.  For the reasons that follow, Defendant's motion is granted in part and denied in part.

## DISCUSSION

**I.     *Motion to Dismiss: Legal Standards***

A complaint is subject to dismissal under Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The test is whether the plaintiff is entitled to offer evidence to support her claim, not whether he is ultimately likely to prevail.  *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).  A court must liberally construe the claims and "accept[] all factual allegations in the complaint and draw[] all

reasonable inferences in the plaintiff's favor." *ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007).

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court

recently addressed the pleading standard applicable in evaluating a motion to dismiss under Rule

12(b)(6). In *Bell Atl. Corp. v. Twombly*, – U.S. –, 127 S. Ct. 1955 (2007), the Court disavowed

the well-known statement in *Conley v. Gibson*, 355 U.S. 41 (1957) that "a complaint should not

be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.

Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts

to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss
> does not need detailed factual allegations, a plaintiff's obligation to
> provide the grounds of his entitlement to relief requires more than
> labels and conclusions, and a formulaic recitation of the elements
> of a cause of action will not do. Factual allegations must be
> enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even
> if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotation marks omitted).

The Second Circuit has stated that *Twombly* does not require a universally

heightened standard of fact pleading, but "instead requir[es] a flexible 'plausibility standard,'

which obliges a pleader to amplify a claim with some factual allegations in those contexts where

such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-

58 (2d Cir. 2007). In other words, *Twombly* "'require[s] enough facts to 'nudge [plaintiffs']

claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, – F.3d –,

No. 06-3128-CV, 2007 WL 2471805, at *2 (2d Cir. Sept. 4, 2007) (quoting *Twombly*, 127 S. Ct. at 1974). Although *Twombly* did not make clear whether the plausibility standard applies beyond the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases." *ATSI Commn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). It is less than clear, however, exactly "when factual 'amplification [is] needed to render [a] claim plausible.'" *Boykin v. Keycorp.*, 521 F.3d 202, 213 (2d Cir. 2008) (brackets in original) (quoting *Iqbal*, 490 F.3d at 158). Further analysis of the pleading standard in a discrimination case is contained in the discussion below.

## II.   *Brown's Motion to Dismiss all Claims Against Him is Denied*

The Amended Complaint asserts three causes of action against Brown: (1) violation of Section 1983; (2) violation of Section 1981; and (3) violation of NYSHRL § 296(6). Defendants move to dismiss these claims on the ground that Plaintiff did not allege facts suggesting Brown's personal involvement. For the reasons stated below, Defendant's motion is denied.

### A.   *Section 1983*

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. This statute furnishes a cause of action for the violation of federal rights created by the Constitution. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617

(1979).  Therefore, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) *as a result of the defendant's actions*, the plaintiff suffered a denial of his federal statutory rights, or his constitutional rights or privileges.  *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d Cir. 1994) (emphasis added).

      As a supervisor for a public employer, Brown acted under color of state law and is subject to liability under Section 1983 in his personal capacity.  *See Annis v. County of Westchester*, 36 F.3d 251, 254 (2d Cir. 1994).  However, merely holding a position of responsibility is insufficient to impose liability under Section 1983.  *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir. 1996) (citations omitted).  A defendant in a Section 1983 action may not be held liable for damages unless he was personally involved in depriving plaintiff of his rights.  *Id*.

**B.**    ***Section 1981***

      Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have
> the same right . . . to make and enforce contracts, to sue, be parties,
> give evidence, and to the full and equal benefit of all laws and
> proceedings, for the security of persons and property.

42 U.S.C. § 1981.  In order to establish a claim under Section 1981, a plaintiff must show, inter alia:  (1) that the defendant discriminated against him on the basis of race; (2) that the discrimination was intentional; and (3) that the discrimination was a "substantial" or "motivating factor" for the defendant's actions.  *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).  As with claims under Section 1983, individual liability under Section 1981 requires the personal involvement of the defendant.  *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) (noting "a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action" to state a Section 1981 claim).

### C.    NYSHRL 296(6)

Section 296(6) states that it is an unlawful discriminatory practice for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." N.Y. Exec. Law § 296(6). The Second Circuit has held that this language imposes individual liability on a defendant who actually participates in the conduct giving rise to a discrimination claim. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). Thus, as with Sections 1983 and 1981, individual liability under section 296(6) turns on whether the individual was personally involved in the allegedly discriminatory action.

### D.    *The Amended Complaint Adequately Alleges Brown's Personal Involvement*

A plaintiff may claim personal involvement by a supervisor by alleging that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [plaintiff] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 2007).

Here, Brown is mentioned in only two paragraphs of the pleading. First, Plaintiff alleges that in December 2004, Plaintiff met with Brown and McPhee to discuss the sexual misconduct accusation filed against him. (Am. Compl. ¶ 20.) Although Plaintiff was told the issue would be investigated, no such investigation occurred. (*Id.*) Next, at the end of his pleading, Plaintiff summarily alleges that Brown and McPhee "unlawfully participated in and

permitted the aforementioned discrimination to perpetuate, without abatement, in violation of

Plaintiff's constitutional and statutory rights pursuant to [Section] 1983 and [Section] 1981."

(*Id.* ¶ 45.)  He further alleges that the individual defendants "condoned, or were deliberately

indifferent to the aforementioned violations of Plaintiff's constitutional rights" and that "[s]uch

deliberate indifference may be inferred," inter alia,  by the "[s]upervisors['] fail[ure] to properly

investigate and address the discrimination to which Plaintiff was subjected" and by their failure

to "correct the discriminatory/harassing conduct/policies as described above."  (*Id.*)

   In analyzing whether Plaintiff's allegations can withstand Defendant's motion,

this Court is guided by the Second Circuit's decision in *Iqbal*.  In that case, the Circuit found that

plaintiff's allegations that the warden knew or should have known of the detention centers'

practice of beating detainees and that the warden was deliberately indifferent in failing to take

action to curtail the beatings were sufficient to state a claim of supervisory liability for the use of

excessive force against plaintiff.  490 F.3d at 170.  The Court explained as follows:

> The plausibility standard requires no subsidiary facts at the
> pleading stage to support an allegation of [the warden's]
> knowledge because it is at least plausible that a warden would
> know of mistreatment inflicted by those under his command.
> Whether such knowledge can be proven must await further
> proceedings.

*Id.*

   Here, based on Plaintiff's allegations, it is "at least plausible" that Brown's failure

to investigate the alleged false sexual misconduct charge was based upon discriminatory animus.

It is also plausible, as Plaintiff argues in his brief, that Brown, as Principal of the middle school,

was "responsible for the day-to-day operation of the school including the supervision of all

personnel [and thus] was in a position to observe and prevent the conduct alleged." (Pl.'s Mem. at 9.) As in *Iqbal*, these are issues which cannot be decided on a Rule 12(b)(6) motion. Accordingly, Defendant's motion to dismiss all claims against Brown for failure to allege his personal involvement is denied.

### III. *Defendant's Motion to Dismiss All Claims Arising out of the Allegedly False Sexual Misconduct Charge is Denied*

Defendants contend that all claims based upon the allegedly false sexual misconduct charge should be dismissed because there are no facts suggesting that this charge was motivated by race or religion. Plaintiff does not respond to this argument in his opposition papers. Accordingly, Defendants maintain that Plaintiff has conceded that this claim has no merit.

Although the Court is underwhelmed with Plaintiff's failure to address Defendants' arguments, because the Court finds that Plaintiff's allegations do state a claim, Defendants' motion is denied. Defendants are correct that the Amended Complaint fails to allege that Defendants somehow orchestrated the sexual misconduct charge based upon Plaintiff's race. However, read in toto, and drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint does allege that Defendants failed to investigate the charge due to Plaintiff's race. It further alleges that due to this failure to investigate and the resulting unresolved nature of the allegations, Plaintiff was thereafter not approved for a tutoring position. Even when he was later approved for tutoring, he was unable to obtain a position, allegedly due to the fact that the charges were never investigated and resolved in Plaintiff's favor. Based on these allegations, one may infer that the District's failure to investigate was part of a pattern of discrimination with the intended goal of excluding Plaintiff from certain teaching positions in the

District.  Although Defendants may prove otherwise via summary judgment, at this stage in the litigation, Plaintiff's allegations are sufficient to survive dismissal under Rule 12(b)(6).

**IV.**     ***Plaintiff's Section 1981 and 1983 Claims***

      **A.**     ***The Amended Complaint Adequately Alleges a Municipal Policy***

      The District moves to dismiss Plaintiff's Section 1981 and 1983 claims on the ground that Plaintiff has failed to allege the existence of a municipal custom or policy.  In order to state a claim against the District under Section 1983, Plaintiff must allege that a deprivation of his constitutional rights was caused by an official policy or custom of the District.  *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978).  The Supreme Court has "consistently refused to hold municipalities liable under a theory of respondeat superior."  *Board of the County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).  Thus, "a municipality may not be held liable under [section] 1983 solely because it employs a tortfeasor."  *Id.*  Similarly, in order to state a claim under Section 1981 against a municipality, a plaintiff must allege "that the challenged acts were performed pursuant to a municipal policy or custom."  *Patterson*, 375 F.3d at 226.

      Here, Plaintiff contends that the Amended Complaint alleges that the District engaged in a policy of discriminatory hiring in which it denied positions to white applicants in favor of less qualified black applicants.  The Court agrees.  The Amended Complaint specifically alleges that no white teachers were selected for the AIS program or the SMS positions, and that the black teachers selected were less qualified than Plaintiff.  It further alleges that Plaintiff was treated adversely, in terms of classroom assignments and observations, than similarly situated black teachers.  Although most of Plaintiff's claims allege conduct by municipal employees that is unique to him, others plausibly imply conduct that was so widespread so as to put the

municipality on constructive notice of it, viz. white teachers being denied positions in favor of less qualified black teachers. *See Sorlucco v. N.Y. City Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992) (noting that discriminatory practices of subordinate municipal employees that are persistent and widespread may constitute "custom or usage" sufficient to generate municipality liability). Accordingly, because the Amended Complaint alleges that ABGS employees engaged in persistent discriminatory conduct against white teachers, it is plausible to infer that the District unreasonably ignored this conduct and is therefore liable for the employees' actions.[1] The merits of Plaintiff's claim, which on its face presents a plausible allegation of municipal policy, should be tested on summary judgment. *See Boykin*, 521 F.3d at 216.[2]

> **B.** ***Plaintiff's Claims of Religious Discrimination are Dismissed in Part***

Defendants move to dismiss Plaintiff's Section 1981 and Section 1983 claims to the extent that are based upon alleged religious discrimination. In response, Plaintiff concedes that Section 1981 does not prohibit discrimination on the basis of religion, *see Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998), and withdraws any such claim. Thus, to the extent

---

[1] The parties do not address whether widespread discriminatory conduct by one school in a multi-school district is sufficient to demonstrate the existence of a municipal policy for purposes of liability under Sections 1981 and 1983. Absent briefing by the parties on this issue, the Court declines to dismiss these claims on this basis at this juncture.

[2] Plaintiff's opposition papers suggest that he is alleging a municipal policy based upon McPhee's failure to select Plaintiff for the AIS program. In *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986), the Supreme Court held that, under certain circumstances, municipal liability may be imposed based upon a single decision or action by a municipal policymaker. *Id.* at 481. The Court made clear, however, that municipal liability attaches only when the decision maker possesses "final authority" to establish municipal policy with respect to the action ordered. *Id.* Here, Plaintiff has failed to allege that McPhee possessed final authority to establish municipal policy and, therefore, the allegations concerning McPhee are insufficient to implicate the municipality in the alleged constitutional deprivation. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004).

the Amended Complaint can be construed to allege a Section 1981 claim predicated on religious discrimination, it is dismissed.

Defendants additionally argue that Plaintiff's religious discrimination claims under Section 1983 should be dismissed because there is not a single factual allegation pleaded regarding discrimination based on religion. The Court disagrees.

The Amended Complaint alleges that Plaintiff is a Jewish male (Am. Compl. ¶ 10), and that he was the subject of discrimination "based on his race and/or religion." (*Id.* ¶ 45.) Although the pleading sets forth specific examples of how Plaintiff was allegedly discriminated against, they are all based on Defendants' alleged preferential treatment of black teachers over white teachers and make no mention of religion, with the exception of one paragraph. Paragraph 36 of the Amended Complaint alleges that Plaintiff received a memorandum on March 2, 2006 stating that there were concerns regarding his professional behavior. Plaintiff alleges that this "memorandum constituted retaliation and harassment against Plaintiff due to his continued objections to the prior discrimination, retaliation, and harassment as well as discrimination based on his race and/or religion." (*Id.* ¶ 36.)

Although the Court has misgivings about the sufficiency of Plaintiff's pleading given some of the language in *Twombly,* considering the Second Circuit's interpretation of *Twombly* in conjunction with the Supreme Court's later pronouncement in *Erickson v. Pardus*, – U.S. –, 127 S. Ct. 2197, 2200 (2007) (noting that "[s]pecific facts are not necessary" under Rule 8(a)), the Court feels it appropriate to deny Defendants' motion. In *Boykin*, an African-American female filed suit against lenders alleging that they denied her home equity loan application based upon her race, gender, and the location of her house in a minority-concentrated

area. 521 F.3d at 206. In reversing the district court's dismissal of her complaint on the grounds

that the discrimination claim was insufficiently pled, the Second Circuit explicitly rejected the

following analysis of the district court:

> While Plaintiff generally alleges that KeyBank discriminated
> against her based on her race and sex, the Complaint contains no
> specific facts supporting her claims. The only specific acts alleged
> in the Complaint are that KeyBank denied Plaintiff's loan and
> failed to offer her other loan products. There are no factual
> allegations whatsoever that connect KeyBank's denial of
> Plaintiff's loan to a discriminatory motive or racial animus. In
> fact, each of Plaintiff's claims of racial discrimination is premised
> "upon information and belief."

*Id.* at 214. The district court "summed up its analysis by stating that '[i]t is not enough for

Plaintiff to simply state that she is a black woman who was denied a loan.'" *Id.* The Second

Circuit disagreed, finding that because Plaintiff "identified the particular events giving rise to her

claim and alleged that she was treated less favorably than other loan applicants because of her

race, her gender and location of her property," *id.* at 215, Plaintiff's "allegations, taken as true,

indicate the possibility of discrimination and thus present a plausible claim . . . ." *Id.* at 216.

The court "emphasize[d] that [it was] expressing no opinion regarding the merits of Boykin's

claims" and that "[t]he merits of a claim like Boykin's, which on its face presents a plausible

allegation of disparate treatment, should be tested on summary judgment."[3] *Id.*

Here, Plaintiff similarly alleges that he was disparately treated due to his race and

religion. As in *Boykin*, Plaintiff has identified the particular events giving rise to his claim, i.e.,

the denial of various teaching positions. Although his pleading is much more specific with

_____

[3] The Court notes that the plaintiff in *Boykin* appeared pro se in that action. However,
the court's holding was not limited to *pro se* pleadings. *See Boykin*, 521 F.3d at 215 (noting that
the Supreme Court has "explicitly disavow[ed] that Rule 8(a) requires any plaintiff – let alone a
*pro se* plaintiff – to plead 'specific facts.'").

regard to alleged racial discrimination, read in toto, it may also be inferred that Plaintiff was treated less favorably due to his religion, an entirely plausible claim. Accordingly, Defendants' motion to dismiss Plaintiff's Section 1983 religious discrimination claims is denied.

## IV. *Several of Plaintiff's Claims are Dismissed as Time-Barred*

Defendants move to dismiss Plaintiff's claims to the extent they are based on conduct alleged to have occurred outside the various limitations periods. Plaintiff does not dispute that such conduct is not actionable and states that he "does not seek damages based upon time barred events." (Pl.'s Mem. at 13.) Relying on *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), Plaintiff argues, however, that he should be "permitted to include untimely claims that evidence Defendants' discriminatory animus" to "establish liability on his timely claims." (*Id.* at 14.)

In *Nat'l R.R. Passenger Corp*, the Supreme Court held that "discrete discriminatory acts [under Title VII] are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Instead, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*[4] "[T]ermination, failure to promote, denial of transfer, [and] refusal to hire" are all discrete acts. *Id.* at 114. The Court recognized, however, that although a plaintiff cannot recover for "discrete acts of discrimination or retaliation that occur outside the statutory time period," *id.* at 105, an employee may "us[e] the prior acts as background evidence in support of a timely claim." *Id.* at 113.

Thus, pursuant to *Nat'l R.R. Passenger Corp.*, although Plaintiff may be

---

[4] The same is true for claims under Section 1981, 1983 and the NYSHRL. *See Roberts v. County of Nassau*, 140 Fed. Appx. 277, 279 (2d Cir. 2005) (unpublished).

-16-

permitted to present evidence at trial regarding prior discriminatory acts,[5] claims that are untimely are subject to dismissal. Because Plaintiff concedes that the conduct specifically outlined in Defendants' moving papers is time-barred, Plaintiff's claims are dismissed as follows:

(1) Plaintiff's Title VII claims based on events occurring prior to June 2, 2005 are dismissed;[6]

(2) Plaintiff's Section 1983 claims based on incidents allegedly occurring prior to December 14, 2003 are dismissed;[7] (3) Plaintiff's Section 1981 claims based on incidents allegedly occurring prior to December 14, 2002 are dismissed;[8] (4) Plaintiff's NYSHRL claims against the individual defendants based on incidents allegedly occurring prior to April 15, 2003 are dismissed;[9] and (5)

---

[5] The Court declines to address this evidentiary issue at this juncture and will defer, until the time of trial, the issue of the admissibility of any time-barred acts as background evidence.

[6] Plaintiff filed his EEOC charge on March 29, 2006. Accordingly, discriminatory acts alleged by Plaintiff to have occurred more than 300 days prior to this filing, viz. June 2, 2005, are time barred. *See* 42 U.S.C. § 2000e-5(e)(1).

[7] Plaintiff filed this action on December 14, 2006; Section 1983 claims are subject to a three-year statute of limitations. *See Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004).

[8] Plaintiff filed this action on December 14, 2006; Section 1981 claims are subject to a four-year limitations period. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382-83 (2004).

[9] Plaintiff filed this action on December 14, 2006. NYSHRL claims are subject to a three-year statute of limitations. *See Bonner v. Guccione*, 178 F.3d 581, 584 (2d Cir. 1999). Three years before commencement of this action, then, is December 14, 2003. Under state and municipal law, however, the statute of limitations is tolled during the pendency of any complaint filed with the New York Division of Human Rights ("NYSDHR"). *See Constance v. Pepsi Bottling Co.*, No. 03-CV-5009, 2007 WL 2460688, at *12 (E.D.N.Y. Aug. 24, 2007). Here, Plaintiff filed a complaint with the EEOC on March 29, 2006. "A charge filed with the EEOC should be treated as constructively cross-filed with the NYDHR and the statute of limitations for state claims should be tolled during the pendency of a claim filed with the EEOC." *Id.* Accordingly, the limitations period for Plaintiff's claims under the NYSHRL is extended by the

Plaintiff's NYSHRL claims against the District based on incidents allegedly occurring more than 90 days prior to the March 29, 2006 EEOC filing are dismissed.[10]  In all other respects, Defendants' motion is DENIED.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint is DENIED in part and GRANTED in part.  Defendants' motion is GRANTED to the extent that: (1) Plaintiff's Section 1981 claims are dismissed to the extent they are based on religious discrimination; and (2) several of Plaintiff's claims are dismissed as time-barred, as set forth above.  In all other respects, Defendants' motion is DENIED.

**SO ORDERED.**

Dated: Central Islip, N.Y.
       August 20, 2008

/s_____
Denis R. Hurley,
United States District Judge

_____

243 days between the filing and denial of Plaintiff's EEOC charge, from March 29, 2006 to November 27, 2006, respectively.

[10]  Section 3813(1) of New York Education Law provides that no action under the NYSHRL shall be brought against a school district unless a plaintiff first files a notice of claim with the governing body of such school district within 90 days from the date the claim accrued. N.Y. Educ. Law § 3813(1).  Here, the Amended Complaint fails to allege that Plaintiff filed a notice of claim and Plaintiff's opposition papers do not address it.  An EEOC filing, however, which is forwarded to the District, may be deemed sufficient notice of claim, *see Donlon v. Bd. of Educ. of Greece Cent. Sch. Dist.*, No. 06-CV-6027, 2007 WL 108470, at *3 (W.D.N.Y. Jan. 12, 2007), so long as it itself is filed within the 90 days.  *See Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.*, 127 F. Supp. 2d 452, 456 (S.D.N.Y. 2001).  Because the parties do not address whether Plaintiff's EEOC filing was sufficient to satisfy the notice of claim requirement, the Court takes no position on that issue at this juncture; it merely finds that any claims occurring more than 90 days before the EEOC filing are time-barred.